NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1269                                        Appeals Court

PHILIP HASOURIS, executor,[1] vs.  KHALED A. SOROUR.


No. 16-P-1269.

Plymouth.      September 14, 2017. – January 8, 2018.

Present:  Wolohojian, Agnes, & Wendlandt, JJ.


Evidence, Previous testimony of unavailable witness, Hearsay,
     Deposition.  Witness, Unavailability, Self-incrimination,
     Expert.  Medical Malpractice, Expert opinion.  Practice,
     Civil, Hearsay, Instructions to jury.



     Civil action commenced in the Superior Court Department on
May 13, 2010.

     The case was tried before Thomas F. McGuire, Jr., J., and a
motion for a new trial was considered by him.


     Albert E. Grady for the plaintiff.
     Michael J. Racette for the defendant.


     WENDLANDT, J.  We address, in the context of a civil

action, whether a witness's deposition testimony can be used at

trial under the prior recorded testimony exception to the rule

_____

     [1] Of the estate of Linda Hasouris.

against hearsay where the witness is unavailable due to a valid invocation of the privilege against self-incrimination. We conclude that, as a general proposition, it can. In this case, however, we need not determine whether the witness validly invoked the privilege because the use of the witness's deposition testimony was permissible pursuant to Mass.R.Civ.P. 32(a)(3)(D), 365 Mass. 787 (1974).

Background. We briefly summarize the facts relevant to the issues presented in this appeal. In May, 2010, the plaintiff, Philip Hasouris, commenced this medical malpractice and wrongful death action, claiming that Dr. Khaled Sorour and several other healthcare providers negligently provided medical care to the plaintiff's wife, Linda Hasouris,[2] in connection with her knee replacement surgery, causing pain and suffering and eventually her death. In January, 2013, the plaintiff's counsel took the deposition of codefendant Dr. Fathalla Mashali. Both Sorour and Mashali were anesthesiologists involved in Hasouris's care. Subsequent to his deposition, Mashali's medical licenses were suspended in Rhode Island and New York, and he voluntary resigned his medical license in Massachusetts. Shortly thereafter, he was indicted for Federal Medicare fraud in connection with his medical practice. Prior to the trial,

---

[2] For the sake of clarity, we refer to Philip Hasouris as "the plaintiff," and Linda Hasouris as "Hasouris."

Mashali (who was still a party at the time) filed a motion to bifurcate and stay the trial, invoking his Fifth Amendment privilege against self-incrimination in light of the Federal criminal charges pending against him and stating his intent not to testify at the upcoming trial. The motion was denied.

In light of Mashali's expressed intent to invoke his privilege against self-incrimination, Sorour filed a notice stating his intent to use portions of Mashali's deposition transcript at the upcoming trial because Mashali was unavailable. Sorour argued that Mashali's deposition testimony could be used under the prior recorded testimony exception to the rule against hearsay.

At a pretrial hearing, Mashali, appearing personally, affirmed his intent to invoke his privilege against self-incrimination if called to testify during the trial, stating:

> "I consulted with my criminal defense attorney . . . and he has advised me, other than my name and my address, not to testify in any civil proceedings anywhere, including this one. So I have notified my attorney . . . that I will not be testifying in the case other than asserting my Fifth Amendment privilege[] under the United States Constitution and under the Commonwealth of Massachusetts Constitution."

Shortly thereafter, the plaintiff settled with Mashali and the other healthcare providers, leaving only Sorour in the case.

A jury trial was held in February, 2015. Sorour served Mashali with a trial subpoena, ordering his appearance at trial. However, Mashali called the clerk's office and stated "that he

was ill and the only way he could appear would be by ambulance." The trial judge indicated that if Mashali did not appear on the subpoenaed date, he was inclined to allow Mashali's testimony to proceed through a reading of the deposition transcript. The plaintiff objected. The plaintiff also noted his evidentiary objections to twelve specific portions of the deposition transcript that Sorour proposed be read. The trial judge sustained three of these evidentiary objections in full, and portions of two of the other objections.

Mashali did not appear as subpoenaed. Sorour's counsel reported that Mashali's criminal defense attorney had told him that Mashali was gravely ill and in any event, would assert his Fifth Amendment privilege. The trial judge permitted Mashali's testimony to be admitted through a reading of the allowed portions of the deposition transcript. In discussion with counsel outside the hearing of the jury, the trial judge stated:

> "In determining unavailability, I think I have some discretion as to how far to go. I have a situation where Mashali did appear some weeks ago indicating that it was [his] intention not to testify. His [criminal defense] attorney . . . has represented that Dr. Mashali is suffering from an illness. [The attorney] is an officer of the court. I expect that the information is reliable. So I'm inclined to allow the use of the deposition over the plaintiff's objection. I note that for the record."

Prior to the reading of the deposition testimony, the judge read to the jury a joint stipulation of the parties in order to address any concerns that Mashali's deposition testimony (taken

before the suspensions of his medical licenses) might be given undue weight by the jury.[3]  Thereafter, the allowed portions of Mashali's deposition transcript were read into evidence.

The jury returned a verdict in favor of Sorour.  The plaintiff filed a motion for a new trial, which was denied.  This consolidated appeal followed.

Discussion.  The plaintiff contends that the trial judge erred in permitting the reading of Mashali's deposition transcript into evidence.  An appellate court will not "disturb a judge's decision to admit evidence absent an abuse of discretion or other legal error."  Zucco v. Kane, 439 Mass. 503, 507 (2003).  See Burns v. Combined Ins. Co. of America, 6 Mass. App. Ct. 86, 91 (1978) (reviewing exclusion of deposition testimony under the abuse of discretion standard).[4]

_____

[3] The judge instructed the jury and read aloud the provisions of the stipulation, as follows:

"There's no dispute about these three facts, so you are free just to accept them. . . .  First . . . the Rhode Island Department of Health suspended Fathalla Mashali, M.D.'s license to practice medicine in the State of Rhode Island.  Second . . . Fathalla Mashali, M.D., entered into a voluntary agreement not to practice medicine with the Commonwealth of Massachusetts Board of Registration in Medicine.  Third . . . the New York State Department of Health suspended Fathalla Mashali, M.D.'s licenses to practice medicine in the [S]tate of New York."

[4] In view of the insufficiency of the record appendix filed by the plaintiff, we have occasion to reiterate that "[t]he burden is on the appellant . . . to furnish a record that supports his claims on appeal."  Arch Med. Assocs. v. Bartlett

1. _Prior recorded testimony_.  The trial judge allowed Sorour to use Mashali's deposition on the ground that Mashali was unavailable.  In doing so, the trial judge appeared to rely on the exception to the evidentiary rule against hearsay that governs the use of prior recorded testimony of an unavailable witness.  See Mass. G. Evid. § 804, at 311 (2017).  Under that exception, the trial judge must determine first whether one of the bases for finding that a declarant is "unavailable" is applicable.  _Ibid_.  Next, the trial judge must determine whether the unavailable witness's prior recorded testimony was given "in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered."  _Commonwealth_ v. _Meech_, 380 Mass. 490, 494 (1980).  See _Commonwealth_ v. _Fisher_, 433 Mass. 340, 355 (2001).  See also _Commonwealth_ v. _Martinez_, 384 Mass. 377, 381 (1981).

---

_Health Enterprises, Inc._, 32 Mass. App. Ct. 404, 406 (1992).  Here, the plaintiff failed to furnish a sufficient record.  For example, although he claims that the trial judge erred in permitting the use of Mashali's deposition testimony, the plaintiff has provided neither the transcript containing the trial judge's decision to allow the use of the deposition testimony nor the transcript from the trial during which Mashali's deposition testimony was read.  Nonetheless, we exercise our discretion to review his arguments on the merits.  See _Worcester County Christian Communications, Inc_. v. _Board of Appeals of Spencer_, 22 Mass. App. Ct. 83, 87 n.4 (1986).

The applicability of the prior recorded testimony hearsay exception does not differ depending on whether the underlying action is criminal or civil.[5]  See Commonwealth v. Clemente, 452 Mass. 295, 313 (2008), cert. denied, 555 U.S. 1181 (2009) ("Our rule in both civil and criminal cases is that prior recorded testimony of a witness at a former trial may be admitted as an exception to the hearsay rule" [emphasis omitted]); 5 Wigmore, Evidence § 1401(b), at 202 (Chadbourn rev. ed. 1974) ("There is . . . no distinction, on principle, as to the conditions of necessity for using depositions and former testimony, between civil and criminal cases" [emphasis omitted]).  Thus, for example, in both the civil and criminal context, the prior recorded testimony exception applies to witnesses who are physically unavailable.  See Costigan v. Lunt, 127 Mass. 354, 356 (1879) (death); Commonwealth v. Mustone, 353 Mass. 490, 491-494 (1968) (same).  See also Commonwealth v. Gallo, 275 Mass. 320, 328-334 (1931) (missing witness); Caron v. General Motors Corp., 37 Mass. App. Ct. 744, 748 (1994) (under Mass.R.Civ.P. 32[a][3][B], as amended, 392 Mass. 1105 [1984], deposition testimony may be used when witness is outside Commonwealth and

_____

[5] In the criminal context, the hearsay statement must (in addition to falling within one of the hearsay exceptions) satisfy the confrontation clause.  See Crawford v. Washington, 541 U.S. 36, 42-69 (2004); Commonwealth v. Gonsalves, 445 Mass. 1, 3, 5-7 (2005), cert. denied, 548 U.S. 926 (2006).  We are not concerned with that additional requirement in the civil context.

cannot be secured for trial).  Similarly, in both the civil and criminal contexts, a witness considered insane is unavailable for purposes of the prior recorded testimony exception.[6]  See Ibanez v. Winston, 222 Mass. 129, 130 (1915); Gallo, 275 Mass. at 331.  Accordingly, because, in the context of a criminal proceeding, a valid invocation of the privilege against self-incrimination renders a witness unavailable, Commonwealth v. Canon, 373 Mass. 494, 499-500 (1977), cert. denied, 435 U.S. 933 (1978),[7] the same principle applies in a civil case.

The only dispute here concerns whether Mashali was "unavailable" in the sense required.[8]  We begin our analysis by determining whether the trial judge erred in finding that Mashali had, in fact, invoked his privilege against self-incrimination.  We conclude that the trial judge did not err in this regard.  Contrary to the plaintiff's argument, we are not confronted with a witness who simply refused to testify without

_____

[6] Other exceptions to the rule against hearsay apply equally in both criminal and civil cases.  See, e.g., Commonwealth v. Barbosa, 477 Mass. 658, 672-673 (2017) (witness's statement in criminal matter properly admitted under excited utterance exception to hearsay rule).  See also Rocco v. Boston-Leader, Inc., 340 Mass. 195, 196-197 (1960) (applying same principle in civil matter).

[7] See Commonwealth v. Koonce, 418 Mass. 367, 378 n.6 (1994).

[8] It is undisputed that the additional requirements of the prior recorded testimony exception, see Meech, 380 Mass. at 494, were satisfied.  The plaintiff had, and took, the opportunity to cross-examine Mashali during his deposition in this case.

explanation. Cf. <u>Commonwealth</u> v. <u>Cook</u>, 12 Mass. App. Ct. 920, 920-921 (1981) (witness, who was in court house restroom, was not unavailable absent explanation of why witness refused to testify). In pretrial motions and hearings, Mashali unequivocally indicated his intent to assert his privilege against self-incrimination if he were called to testify. Then, in response to the trial subpoena, his criminal defense attorney stated that Mashali continued to invoke the privilege. See <u>Pixley</u> v. <u>Commonwealth</u>, 453 Mass. 827, 832 (2009) (invocation of privilege against self-incrimination through counsel permissible). Accordingly, the trial judge did not err in his determination that Mashali had sufficiently expressed his intent to invoke the privilege against self-incrimination.[9] Cf. <u>Commonwealth</u> v. <u>Charles</u>, 428 Mass. 672, 679 (1999) ("As a general matter, it should not be presumed that an absent witness

_____

[9] Contrary to the plaintiff's argument, Mashali was not required to invoke the privilege in the presence of the jury. See 1 McCormick on Evidence § 130, at 749 (Broun ed., 7th ed. 2013) ("Ordinarily, it is desirable that the jury not know that a witness has invoked the privilege, since neither party to litigation is entitled to draw any inference from a witness's invocation"). The plaintiff neither argues for an adverse inference against Sorour arising from Mashali's invocation of the privilege nor suggests that this is a case in which the witness was so closely aligned with Sorour that the invocation of the privilege would warrant such an inference. Cf. <u>Lentz</u> v. <u>Metropolitan Prop. & Cas. Ins. Co.</u>, 437 Mass. 23, 31-32 (2002) (where evidence of nonparty's invocation of privilege is presented to jury, they should be instructed not to draw adverse inference against party "if they find that the witness invoked the privilege for reasons unrelated to the case on trial").

may invoke his or her privilege against self-incrimination");
Commonwealth v. Lopera, 42 Mass. App. Ct. 133, 137 n.3 (1997).

We turn next to the question whether the trial judge could have found that the privilege was validly invoked.[10]  "When a witness, directly or through counsel, declares his intent to invoke the privilege against self-incrimination and the party who had intended to call the witness challenges whether the privilege has been properly invoked, the trial judge must make an informed determination whether the witness has established a real risk that his testimony could possibly tend to incriminate him."  Pixley, 453 Mass. at 832.

In making that determination, the trial judge must be mindful that "[b]ecause an individual's right to be free from self-incrimination is a fundamental principle secured by the Fifth Amendment and by art. 12 of the Massachusetts Declaration of Rights, the privilege is to be liberally construed in favor of the person claiming it."  Commonwealth v. Koonce, 418 Mass. 367, 378 (1994).  Thus, a witness who asserts a privilege against self-incrimination generally cannot be compelled to testify unless it is "perfectly clear from a careful consideration of all the circumstances in the case that the

---

[10] On appeal, the plaintiff does not argue that Mashali waived his privilege against self-incrimination by providing his deposition testimony.

witness is mistaken, and that the answer[s] <u>cannot possibly</u> have such tendency to incriminate." <u>Matter of Proceedings Before a Special Grand Jury</u>, 27 Mass. App. Ct. 693, 697 (1989) (quotation omitted). Moreover, the anticipated testimony need not be a direct admission of criminal activity; instead, the privilege extends to any testimony that "would furnish a link in the chain of evidence needed to prosecute the [witness] for a [F]ederal [or State] crime." <u>Hoffman</u> v. <u>United States</u>, 341 U.S. 479, 486 (1951).

"Nonetheless, a witness may not rely on a bald assertion of his privilege if the circumstances do not clearly indicate a possibility of self-incrimination. . . . A witness must show a real risk that his answers to questions will tend to indicate his involvement in illegal activity, and not a mere imaginary, remote or speculative possibility of prosecution. . . . A witness also is not entitled to make a blanket assertion of the privilege. The privilege must be asserted with respect to particular questions, and the possible incriminatory potential of each proposed question, or area which the prosecution might wish to explore, must be considered." <u>Commonwealth</u> v. <u>Martin</u>, 423 Mass. 496, 502 (1996) (quotations omitted). See <u>Commonwealth</u> v. <u>Sueiras</u>, 72 Mass. App. Ct. 439, 445 (2008) (blanket assertion of privilege impermissible); <u>United States</u> v. <u>Goodwin</u>, 625 F.2d 693, 701 (5th Cir. 1980) ("A blanket assertion

of the privilege without inquiry by the court, is unacceptable").

The record does not show that the requisite particularized inquiry was made in this case; the trial judge does not appear to have considered whether any particular questions or areas of examination or cross-examination would have tended to incriminate Mashali.  Contrast Commonwealth v. Pixley, 77 Mass. App. Ct. 624, 628-629 (2010).  Nonetheless, we need not determine whether Mashali's invocation of the privilege was valid.  As set forth in part 2 of our discussion, infra, his deposition testimony was independently admissible pursuant to Mass.R.Civ.P. 32(a)(3)(D).  See Gabbidon v. King, 414 Mass. 685, 686 (1993) ("It is well established that, on appeal, we may consider any ground apparent on the record that supports the result reached in the lower court").

2.  Application of Mass.R.Civ.P. 32(a)(3)(D).  Rule 32 of the Massachusetts Rules of Civil Procedure governs the use of deposition testimony in a civil trial.  See Mass. G. Evid. § 804(b)(1) & note, at 323 (2017); Brodin and Avery, Massachusetts Evidence § 8.18 (2017 ed.).  The rule provides, in relevant part:

> "(a) . . . At the trial, . . . any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or

> who had due notice thereof, in accordance with any one of the following provisions: . . . (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (D) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena."

Mass.R.Civ.P. 32, 365 Mass. 787 (1974).

To begin, it is beyond dispute that the rule's requirement that the plaintiff "was present or represented at the taking of the deposition or . . . had due notice thereof" was met here. In particular, the plaintiff's counsel took the deposition of Mashali. See Frizzell v. Wes Pine Millwork, Inc., 4 Mass. App. Ct. 710, 712 (1976) ("[The use of deposition testimony] at trial is premised on a prior right to cross-examine the deponent"). Compare Kirby v. Morales, 50 Mass. App. Ct. 786, 790-791 (2001) (affirming exclusion of unavailable witness's deposition testimony because party opposing its use was not party at time of deposition and had no opportunity to cross-examine deponent).

Next, the record is clear that Sorour was unable to procure Mashali's attendance at trial despite serving him with a subpoena. See Mass.R.Civ.P. 32(a)(3)(D). In this case, there is no suggestion that Sorour was less than diligent, or in any way complicit in Mashali's failure to attend or testify at trial. See Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 308 (7th Cir. 2009), cert. denied, 562 U.S. 1061 (2010) ("Implicit in this rule [permitting use of deposition testimony]

is an obligation to use reasonable diligence to secure the witness's presence").[11]  To the contrary, the plaintiff acknowledged Sorour's diligent efforts.[12]  Cf. Hanson v. Parkside Surgery Center, 872 F.2d 745, 750 (6th Cir.), cert. denied sub nom. Hanson v. Arrowsmith, 493 U.S. 944 (1989); Schwartz v. System Software Assocs., 32 F.3d 284, 289 (7th Cir. 1994).

Contrary to the plaintiff's suggestion, nothing in rule 32 or our case law requires a trial judge to issue a bench warrant before concluding that a party has been unable to procure a witness's presence within the meaning of rule 32.  See Thomas, 604 F.3d at 308 (noting that Federal cognate to rule 32 does not require the trial court to issue an arrest warrant before permitting the use of deposition testimony).  Accordingly, the requirements of rule 32(a)(3)(D) were satisfied, and the trial judge did not err in permitting the use of Mashali's deposition testimony at the trial.[13]

---

[11] In interpreting Mass.R.Civ.P. 32(a)(3)(D), we have drawn on the guidance of Federal cases interpreting the cognate Federal rule, Fed.R.Civ.P. 32(a)(4)(D).  Compare Caron v. General Motors Corp., 37 Mass. App. Ct. at 749-751 (construing Mass.R.Civ.P. 32[a][3][B]).

[12] See Frederick v. Yellow Cab Co. of Philadelphia, 200 F.2d 483, 486 (3d Cir. 1952).  In contrast, the record is devoid of any affirmative steps taken by the plaintiff to secure Mashali's presence at the trial despite the plaintiff's knowledge that Mashali was unlikely to attend.

[13] We need not reach the question whether Mashali's deposition testimony was also admissible pursuant to

3.  Expert testimony.  We turn to the plaintiff's argument that the trial judge abused his discretion in admitting select portions of Mashali's deposition testimony, which the plaintiff contends constituted improper expert testimony.[14]  The plaintiff asserts that these parts of Mashali's deposition should not have been admitted because the plaintiff was prejudiced by his inability to cross-examine Mashali on these subjects in order to point out that his medical licenses had been suspended.

"The extensive discretion of trial judges with respect to both the process of discovery and the admission of evidence . . . [is] too well established to require citation."  Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 485 (2000).  Here, we discern no abuse of discretion.  Any concern that the jury would give Mashali's deposition undue weight as expert testimony because he was a medical doctor was mitigated by the parties' joint stipulation regarding the suspension of Mashali's medical licenses, which was presented to the jury precisely to avoid their affording the testimony any undue weight.  Under these circumstances, there was no abuse of discretion.

---

Mass.R.Civ.P. 32(a)(3)(C), 365 Mass. 787 (1974), which governs the use of depositions in civil proceedings where the witness is "unable to attend or testify because of age, sickness, infirmity, or imprisonment."

[14] The plaintiff's objections to portions of Mashali's deposition testimony concern Mashali's interaction with Hasouris, his general custom and practice, and his interpretation of Hasouris's medical history chart.

<u>Judgment affirmed</u>.

<u>Order denying motion for new trial affirmed</u>.